United States District Court
Southern District of Texas
**ENTERED**
August 20, 2025
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **HANCOCK WHITNEY BANK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-4638** |
| | § | |
| **M.Y.R.T.A. INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court[1] is Plaintiff Hancock Whitney Bank's ("Plaintiff") Motion for Default Judgment (ECF No. 23). Based on a review of the motion, argument, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment[2] (*id.*) be **GRANTED**.

## I.    Background

On November 25, 2024, Plaintiff sued M.Y.R.T.A. Inc. ("MYRTA"), Brenda C. Aparicio ("Brenda"), and Florentino Aparicio ("Florentino") (collectively, "Defendants"). (ECF No. 1). Plaintiff asserts claims for breach of contract against Defendants and seeks attorney's fees, unpaid principal,

---

[1] On March 18, 2025, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 13).

[2] Plaintiff filed a Supplement to the Motion for Default Judgment containing additional supporting documents at ECF No. 25. While docketed as a pending motion, the supplement should not be a pending motion and the Clerk's Office is instructed to remove such designation.

outstanding fees and charges, pre-judgment interest, and post-judgment interest.  (*Id*. at ¶¶ 37–50).

In December 2024, service was executed on MYRTA and Florentino, by serving Florentino, MYRTA's registered agent.  (ECF No. 7; *see* ECF No. 25-2).  On March 5, 2025, Plaintiff filed a Motion for Alternative Service of Process against Brenda, which was granted.  (ECF Nos. 8–9).  Service was executed on Brenda on March 10, 2025.  (ECF No. 11).  Because Defendants did not file a responsive pleading or otherwise defend the suit, Plaintiff filed Requests for Entry of Default against Defendants.  (ECF Nos. 12, 14).[3]  On June 26, 2025, this Court found Plaintiff complied with the requirements of Federal Rule of Civil Procedure 55(a) and directed the clerk to enter default against the Defendants.  (ECF Nos. 15–16).  The Court further ordered Plaintiff to (a) move for judgment by default; (b) submit affidavits with supporting documentation of Plaintiff's damages; (c) submit affidavit evidence on attorney's fees; and (d) submit a proposed Final Judgment within thirty days of the Order.  (ECF No. 15 at 2; ECF No. 16 at 2).  The same day, the clerk entered default against the Defendants.  (ECF Nos. 17–18, 21).

---

[3] Plaintiff filed separate Requests for Entry of Default, the first being against MYRTA and Florentino and the second against Brenda, as service was issued separately.

On July 2, 2025, Plaintiff filed a Motion for Default Judgment. (ECF No. 23). Plaintiff provided the Court with proof of service that the Motion for Default Judgment was served on Defendants. (ECF No. 25-1). The Court held a hearing on the Motion for Default Judgment on August 14, 2025. (*See* ECF No. 24).

## II.    Legal Standards

A court may enter a default judgment against a defendant who fails to plead or otherwise defend an action if the plaintiff establishes: "(1) the defendant was served with the summons and complaint and default was entered; (2) the defendant is not 'a minor or incompetent person'; and (3) the defendant is not in the military." *Russell v. Hall*, No. 3:19-cv-874, 2020 WL 9848765, at *2 (N.D. Tex. Dec. 4, 2020), *report and recommendation adopted*, No. 3:19-cv-874, 2021 WL 2226490 (N.D. Tex. June 2, 2021) (citing FED R. CIV. P. 55(b)(2); 50 U.S.C. § 3931(a), (b) (providing "[p]rotection [for] servicemembers against default judgments")).[4]

The Fifth Circuit requires a three-step procedure for obtaining a default judgment: "(1) default by the defendant; (2) entry of default by the Clerk of the Court; and (3) entry of default judgment by the district court." *Id.* (citing *New*

---

[4] Plaintiff has established Defendants were served and default was entered, Defendants are not minor or incompetent persons, and Defendants are not in the military. (*See* ECF No. 23 at 3–4).

3

*York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("defining 'the terms regarding defaults'")). "'A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules.'" *Id.* (quoting *Brown*, 84 F.3d at 141).

Although the Fifth Circuit favors resolving cases on their merits rather than granting default judgments, this preference is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial court's discretion." *Id.* (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). "In consideration of these competing preferences, the Court takes a two-part approach in determining whether to grant entry of default judgment." *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (requiring a "sufficient basis in the pleadings for the judgment entered")); *see also Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (stating "relevant factors" in determining whether default judgment is appropriate).

In deciding whether default judgment is appropriate, the Court first considers the following relevant factors:

- Whether material issues of fact are at issue;
- Whether there has been substantial prejudice;
- Whether the grounds for default are clearly established;

4

- Whether the default was caused by a good faith mistake or excusable neglect;
- The harshness of a default judgment; and
- Whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.  "Default judgment is appropriate when a defendant fails to answer or otherwise respond to the pleadings or court orders."  *Russell*, 2020 WL 9848765, at *2 (citing *McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir. 1970) (upholding a default judgment due to defendant's "delay and failure to comply with court rules")).

Next, the Court must examine the merits of Plaintiff's claims and find a "'sufficient basis in the pleadings for the judgment entered.'"  *Id.* (quoting *Nishimatsu*, 515 F.2d at 1206).  A pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Such requirement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "By defaulting, the defendant is deemed to admit 'the plaintiff's well-pleaded allegations of fact' and is not deemed to 'admit allegations that are not well-pleaded or to admit conclusions of law.'"  *Russell*, 2020 WL 9848765, at *2 (quoting *Nishimatsu*, 515 F.2d at 1206).  The factual allegations need only "be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Detailed allegations are not required, but

5

"the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"A default judgment . . . establishes the defendant's liability.  But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).  "[I]n the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing . . . [except] where the amount claimed is a liquidated sum or one capable of mathematical calculation." *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).  A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.  Thus, affidavits submitted to support a claim for mathematically calculable damages "must be sufficiently detailed to establish necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III.  Discussion

The Court finds default judgment is warranted and recommends Plaintiff's Motion for Default Judgment (ECF No. 23) be granted as to liability on the breach of contract claims and, based on the August 14, 2025 evidentiary hearing, damages, attorney's fees, and interest.

### A.    *Lindsey* Factors

Considering the *Lindsey* factors, a default judgment is appropriate based on the evidence.  *See Lindsey*, 161 F.3d at 893 (listing factors to determine whether default judgment is appropriate).

(1) First, there is no evidence that Defendants' failure to respond or defend themselves is a result of a "good faith mistake or excusable neglect."  *Id.* at 893.

(2) Second, Defendants' failure to respond threatens to halt the adversary process, which prejudices Plaintiff's interests in pursuing its rights.  *See id.* (stating "substantial prejudice" factor).

(3) Third, Plaintiff only seeks the relief they are entitled to.  *See id.* (stating "harshness" factor).

(4) Fourth, there is no dispute of the facts where Defendants, "by [their] default, admits the plaintiff's well-pleaded allegations of fact." *Nishimatsu*, 515 F.2d at 1206; *see also Lindsey*, 161 F.3d at 893 (stating "issues of fact" factor).

(5) Fifth, the "grounds for default are clearly established," as Defendants failed to show cause as to why a default judgment should not be entered against them.  *See Lindsey*, 161 F.3d at 893.

(6) Finally, based on the facts known to the Court, there is no "good cause" for which the Court would be "obliged to set aside the default on the defendant's motion."  *Id.*; *see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (upholding district court's grant of default judgment when defendant failed to respond to summons within forty days).

Defendants had months to obtain counsel, respond to Plaintiff's Complaint (ECF No. 1), or communicate with the Court in order to prevent default judgment.  However, Defendants failed to do any of these things.  As

such, entering default judgment against Defendants will be consistent with "social goals, justice, and expediency." *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see Russell* 2020 WL 9848765, at *4.

## B.   Sufficiency of the Complaint

Regarding Plaintiff's claims against Defendants, the allegations provide a "sufficient basis in the pleadings" for a default judgment against Defendants. *Nishimatsu*, 515 F.2d at 1206.

An entry of default judgment requires a "sufficient basis in the pleadings" to establish a defendant's liability. *Id.* By defaulting, a defendant is deemed to admit all "well-pleaded allegations" in the complaint but is "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206).  To determine whether an allegation is "well-pleaded," the Fifth Circuit looks to Federal Rule of Civil Procedure 8, which governs the sufficiency of a complaint. *Id.* at 498.  Under that standard, "detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Palafox v. Zamudio*, No. 5:22-cv-73, 2023 WL 5173765, at *3 (S.D. Tex. June 12, 2023) (internal quotations omitted).

Plaintiff asserts a breach of contract claim against each Defendant. (ECF No. 1 at 7–8.) Plaintiff claims Defendants failed to make payments to Plaintiff pursuant to: (1) a Commercial Line of Credit Agreement and Note dated October 19, 2022 with MYRTA in the original principal amount of up to $200,000.00 ("Note 1"); (2) a Commercial Line of Credit Agreement and Note dated December 7, 2022 with Brenda in the original principal amount of up to $100,000.00 ("Note 2"); (3) a Commercial Guaranty by Florentino dated December 6, 2018 ("Guaranty 1"), guaranteeing payment of MYRTA's debt; and (4) a Commercial Guaranty by Brenda dated December 6, 2018 ("Guaranty 2"), guaranteeing payment of MYRTA's debt (collectively, "Guaranties") (ECF No. 1 at 1–2, 6).

Plaintiff's Complaint sufficiently alleges a breach of contract claim against Defendants. "To succeed on a breach of contract claim under Texas law, a plaintiff must show: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Sinkler v. Evergreen Valley Productions, LLC*, No. 4:22-cv-00472, 2023 WL 6545419, at *4 (E.D. Tex. Sept. 13, 2023), *report and recommendation adopted*, No. 4:22-cv-00472, 2023 WL 6540713 (E.D. Tex. Oct. 6, 2023) (quoting

*Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018)).[5]

### 1.    Note 1

Plaintiff and MYRTA entered into a valid contract with respect to Note 1 on October 19, 2022 in the original principal amount of up to $200,000.00. (ECF No. 1-1).  In return, "MYRTA was required to make regular monthly payments of 'all accrued unpaid interest due' 'plus any amounts past due and all other fees and charges then due' on the eighteenth day of each month "[b]eginning on November 18, 2022[.]"  (ECF No. 1 at ¶ 10 (quoting ECF No. 1-1 at 1)).  Further, on the maturity date, MYRTA was required to pay Plaintiff "'the total of all credit advances or such other amount as shall have been advanced by [Plaintiff], . . . plus all accrued interest and interest charges, together with all fees, charges (including service charges), costs, and expenses for which [MYRTA]  is responsible under [Note 1].'"  (*Id.* at ¶ 11 (quoting ECF No. 1-1 at 1)).  Note 1 is signed by Florentino, as an officer of MYRTA, and Jessica Olmos, on behalf of Plaintiff.  (ECF No. 1-1 at 12).  In addition, Brenda signed Guaranty 2 and Florentino signed Guaranty 1 whereby each are "'absolutely and unconditionally guarantee[d] full and punctual payment and

---

[5] Texas law governs the contracts at issue.  (*See* ECF No. 1-1 at 6; ECF No. 1-2 at 6; ECF No. 1-3 at 2; ECF No. 1-4 at 2).

satisfaction of the Indebtedness of Borrower [MYRTA] to Lender [Plaintiff[.]'"
(ECF No. 1 at ¶ 33 (quoting ECF No. 1-3 at 1; ECF No. 1-4 at 1)).  The
indebtedness includes

> all the principle amount outstanding from time to time and at any
> one or more times, accrued unpaid interest thereon and all
> collection costs and legal expenses related thereto permitted by
> law, Lender [Plaintiff]'s reasonable attorneys' fees, arising from
> any and all debts, liabilities and obligations of every nature or
> form, now existing or hereafter arising or acquired, that Borrower
> [MYRTA] individually or collectively or interchangeably with
> others, owes or will owe Lender [Plaintiff].

(ECF No. 1-3 at 1; ECF No. 1-4 at 1).  The Guaranties provide Plaintiff may
hire or pay someone to enforce the Guaranties and that Florentino and Brenda
are responsible to pay the costs and expenses of such enforcement, including
reasonable attorneys' fees and legal expenses.  (ECF No. 1 at 7).  Accordingly,
Plaintiff has sufficiently shown the existence of a valid contract as to Note 1
and the Guaranties.

As to performance and breach, Plaintiff provided a copy of Note 1,
showing a line of credit extended to MYRTA with a limit of $200,000.00.  (ECF
No. 1-1 at 1).  Plaintiff claims MYRTA received value through Note 1.  (ECF
No. 1 at ¶ 9).  However, Plaintiff alleges "MYRTA missed the required payment
due in July of 2024 and has not made a payment on [Note 1] since then."  (*Id.*
at ¶ 12).  Further, Plaintiff provides copies of demand letters, dated September
9, 2024 and November 1, 2024, sent to Florentino and Brenda as guarantors of

MYRTA in compliance with the terms of Note 1.  (*See* ECF No. 1-5; ECF No. 1-6; ECF No. 1 at ¶¶ 13–18; ECF No. 1-1 at 5).  According to Plaintiff, Defendants failed to pay on Note 1 and failed to respond to Plaintiff's demand letters.  (ECF No. 1 at ¶ 14).  Further, despite having made demands for payment of the funds loaned/advanced to MYRTA, Brenda and Florentino failed to make payments to Plaintiff as agreed in the signed Guaranties.  (ECF No. 1 at 8).  Thus, Plaintiff has established its performance and Defendants' breach of the obligations on Note 1 and the Guaranties.

As to damages, Plaintiff alleges, as of July 2, 2025, there is a total balance on Note 1 of $230,177.04.  (ECF No. 23-3 at 2).  This amount includes an outstanding principal balance due in the amount of $198,214.32, unpaid interest that is currently accruing at the default rate of 18.0%, and outstanding late charges of $90.00.  (*Id.*; ECF No. 1 at ¶ 20; ECF No. 1-1 at 6).

Accordingly, Plaintiff has shown each of the four requisite elements to establish breach of contract have been met; thus, a sufficient basis in the pleadings exists to enter a default judgment.  *See Sinkler*, 2023 WL 6545419, at *4.  The Court recommends Plaintiff be granted default judgment on its breach of contract claim against MYRTA and its breach of contract claims against Florentino and Brenda as guarantors on Note 1.

### 2.    Note 2

Plaintiff and Brenda also entered into a valid contract with respect to Note 2 on December 7, 2022 in the original principal amount of up to $100,000.00. (ECF No. 1-2). In return, Brenda "was required to make regular monthly payments of 'all accrued unpaid interest due' 'plus any amounts past due and all other fees and charges then due' on the sixth day of each month '[b]eginning on January 6, 2023[.]'" (ECF No. 1 at ¶ 22 (quoting ECF No. 1-2 at 1)). Further, on the maturity date, Brenda was required to pay Plaintiff "'the total of all credit advances or such other amount as shall have been advanced by [Plaintiff], from time to time, to or on behalf of [Brenda], plus all accrued interest and interest charges, together with all fees, charges (including service charges), costs, and expenses for which [Brenda] is responsible[.]'" (*Id.* at ¶ 23 (quoting ECF No. 1-2 at 1)). Note 2 is signed by Brenda and Jessica Olmos, on behalf of Plaintiff. (ECF No. 1-2 at 12). Accordingly, Plaintiff has sufficiently shown the existence of a valid contract as to Note 2.

As to performance and breach, Plaintiff provided a copy of Note 2, showing a line of credit extended to Brenda with a limit of $100,000.00. (ECF No. 1-2 at 1). Plaintiff claims Brenda received value through Note 2. (ECF No. 1 at ¶ 21). However, Plaintiff alleges Brenda "missed the required payment due in July of 2024 and has not made a payment on [Note 2] since then." (*Id.*

at ¶ 24).  Further, Plaintiff provides copies of demand letters, dated September 9, 2024 and November 1, 2024, sent to Brenda in compliance with the terms of Note 2.  (*See* ECF No. 1-7; ECF No. 1-8; ECF No. 1 at ¶¶ 27–30; ECF No. 1-2 at 5).  According to Plaintiff, Brenda failed to pay on Note 2 and failed to respond to Plaintiff's demand letters.  (ECF No. 1 at ¶ 26).  Thus, Plaintiff has established its performance and Brenda's breach of the obligations on Note 2.

As to damages, Plaintiff alleges as of July 2, 2025, there is a total balance on Note 2 of $108,494.16.  (ECF No. 23-3 at 2).  This amount includes an outstanding principal balance due in the amount of $93,500.00, unpaid interest that is currently accruing at the default rate of 18.0%, and outstanding late charges of $105.00.  (*Id.*; ECF No. 1 at ¶ 32; ECF No. 1-2 at 6).

Accordingly, Plaintiff has shown each of the four requisite elements to establish a breach of contract have been met; thus, a sufficient basis in the pleadings exists to enter a default judgment.  *See Sinkler*, 2023 WL 6545419, at *4.  The Court recommends Plaintiff be granted default judgment on its breach of contract claim against Brenda on Note 2.

### C.    Damages

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability.  But it does not establish the amount of damages."  *U.S. For Use of M-CO Const., Inc. v. Shipco Gen., Inc.*, 814 F.2d

14

1011, 1014 (5th Cir. 1987). "Accordingly, it remains Plaintiff's burden to provide an evidentiary basis for the damages it seeks." *Geiken v. Worku*, No. 3:15-cv-2442, 2017 WL 1709692, at *8 (N.D. Tex. May 2, 2017).

## 1. Contractual Damages

"For unliquidated damages, '[t]estimony of the total amount due under a written instrument is legally sufficient to support an award of that amount in a default judgment proceeding.'" *Sinkler*, 2023 WL 6545419, at *5 (quoting *Tex. Com. Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999)). "This testimony can be in the form of affidavit, which is probative evidence of damages and is not hearsay." *Id.* (citing *Sherman Acquisition II LP v. Garcia*, 229 S.W.3d 802, 811 (Tex. App.—Waco 2007, no pet.)). "An affidavit from the moving party can satisfy this requirement." *Id.* (citing *Bargainer v. Saddlebrook Apartments*, 104 S.W.3d 171, 173 (Tex. App.—Waco 2003, no pet.)).

Plaintiff seeks relief from MYRTA, Florentino and Brenda jointly and severally on Note 1 and against Brenda on Note 2. (ECF No. 1 at 9). Specifically, Plaintiff seeks $230,177.04 against MYRTA and Florentino and $338,671.20 against Brenda in contractual damages.[6] (ECF No. 23 at 3–4). In

---

[6] The contractual damages Plaintiff seeks against Brenda is the amount of Note 2 ($108,494.16) as well as her obligation through Guaranty 2 to pay MYRTA's debt ($230,177.04) "jointly and severally for the entire unpaid principal balance owing on [Note 1], together with all outstanding fees and other charges due and owing on [Note 1], together with all accrued, unpaid interest thereon at the rate of 18.0% until the time of judgment." (ECF

support of such claim, Plaintiff submitted the signed and sworn declaration of Robert Stone ("Stone"). (ECF No. 23-3). With respect to MYRTA and Florentino, Stone states they owe Plaintiff "$230,177.04 in contractual damages that can be made certain by simple computation." (*Id.* at 2). With respect to Brenda, Stone states she owes Plaintiff "$338,671.20 in contractual damages that can be made certain by simple computation." (*Id.* at 2–3).

Given the attached records, including Note 1, Note 2, Guaranty 1, Guaranty 2, and Stone's Affidavit, the Court recommends Plaintiff be awarded $230,177.04 against MYRTA, Florentino, and Brenda, jointly and severally, and $108,494.16 against Brenda (Note 2) in contractual damages.

## 2. Attorney's Fees

Plaintiff seeks reasonable attorney's fees against MYRTA, Florentino, and Brenda jointly and severally. (ECF No. 1 at 9). Specifically, Plaintiff seeks attorney's fees in the amount of $8,856.32 to be paid jointly and severally for fees incurred in enforcing Note 1, Note 2, and the Guaranties. (*Id.* at 9, 23 at 5).

"The first step in setting an appropriate award looks to the 'lodestar' of the relevant fees." *S & P Inv. Group, LLC v. Kingdom Materials Holdings,*

---

No. 1 at 9). As such, the contractual damages Plaintiff seeks against Brenda is $338,671.20, considering her joint and several liability on Note 1 for $230,177.04.

*LLC*, No. 4:21-cv-00159, 2022 WL 2919498, at *4 (N.D. Tex. July 7, 2022),

*report and recommendation adopted*, No. 4:21-cv-00159, 2022 WL 2918606

(N.D. Tex. July 25, 2022) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.

1993)). "'The lodestar is the product of the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly billing rate.'" *Id.*

(quoting *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe

Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)).

Plaintiff has provided the affidavit of Neale Shields ("Shields"), attorney

for Plaintiff.    (ECF No. 23-5).    Shields testifies his services amount to

$8,856.32.  (*Id.* at 3).  Such services include:

> Counseling with [Plaintiff]'s representative regarding the
> payment demands sent to the Defendants, reviewing the myriad of
> pertinent loan documents and account statements, researching the
> Defendants, preparing and sending demands for payment to the
> Defendants, preparing and filing a Complaint in Federal Court
> against the Defendants, working with the process servers to effect
> service of process, preparing a Motion for Alternative Service of
> Process, working with the process servers to effect alternative
> service on [Brenda], preparing motions (and supporting affidavits
> and other documentation) for entry of default against each of the
> Defendants, and preparing a Motion for Default Judgment (and
> supporting affidavits and other documentation) and proposed
> Final Judgment.

(*Id.*).  At the August 14, 2025 hearing, Shields estimated he worked on the case

for thirty hours.  Shields' rate equates to about $295.00 per hour, which the

court finds reasonable.  *See Rocha v. Balfour Beatty Military Hous. Mgmt.*,

LLC, No. 16-cv-358, 2017 WL 10774806, at *4 (W.D. Tex. Apr. 10, 2017) (finding a rate of $300 per hour as reasonable); *Tollett v. City of Kemah*, 285 F.3d 357, 368–69 (5th Cir. 2002) (same).  Accordingly, the Court recommends attorney's fees be awarded in the amount of $8,856.32 to be paid jointly and severally by MYRTA, Florentino, and Brenda.

### 3.  Prejudgment Interest

Plaintiff is also entitled to prejudgment interest on its damages award. Prejudgment interest is compensation allowed by law as "additional damages for lost use of money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998).  "Under Texas law, prevailing parties receive prejudgment interest as a matter of course." *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994).

"[I]n diversity cases, . . . pre-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002).  "'The Texas Supreme Court has recognized two separate bases for the award of prejudgment interest: (1) an enabling statute; and (2) general principles of equity.'" *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 460 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 Fed. Appx. 256 (5th Cir. 2018) (quoting *Int'l Turbine Servs., Inc. v. VASP*

*Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002)).  Under Texas law, a plaintiff is entitled to the prejudgment interest rate specified in the contract. *DP Sols., Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003); *see Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 780 (Tex. App.—Corpus Christi 2001, no pet.) (prejudgment interest rate is the rate set forth in the contract); *Branch Banking & Tr. Co. v. Re Rez L.P.*, No. 4:19-cv-630, 2021 WL 863766, at *9 (E.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, No. 4:19-cv-630, 2021 WL 857937 (E.D. Tex. Mar. 5, 2021) ("If an interest rate is specified in a contract, then the pre-judgment interest accrues in accordance with § 304.002 of the Texas Finance Code.").  "Section 304.002 provides that postjudgment interest will be the lesser of the rate specified in the contract or 18% a year." *Real Advantage Title Ins. Co. v. Sims*, No. 3:20-cv-3719-L, 2022 WL 658559, at *3 (N.D. Tex. Mar. 4, 2022) (citing TEX. FIN. CODE § 304.002).  "In Texas, pre-judgment interest begins to accrue on the earlier of (1) 180 days after the defendant receives written notice of a claim; or (2) the date suit is filed." *SCP Distributors, L.L.C. v. Tex. Pool Group, L.L.C.*, No. 22-cv-4522, 2024 WL 534617, at *9 (S.D. Tex. Feb. 9, 2024).

Here, the prejudgment interest rate specified in the contracts is 18.0% per annum.  (ECF No. 1-1 at 6; ECF No. 1-2 at 6).  As provided by Plaintiff, interest on Note 1 is accruing at 18.0% per annum or $99.10716 per diem and

interest on Note 2 is accruing at 18.0% per annum or $46.75.00 per diem.  (ECF No. 23-3 at 2).  Plaintiff filed its Complaint on November 25, 2024.  (ECF No. 1).  Accordingly, the Court recommends Plaintiff be entitled to prejudgment interest at a rate of 18.0% per annum from November 25, 2024 until the day preceding the date judgment is entered, to be paid jointly and severally by MYRTA, Florentino and Brenda on Note 1.  The Court further recommends Plaintiff be entitled to prejudgment interest at a rate of 18.0% per annum from November 25, 2024 until the day preceding the date judgment is entered, to be paid by Brenda on Note 2.

### 4.  Postjudgment Interest

"With respect to an award of postjudgment interest, federal law applies on 'any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship.'" *Prosperity Bank v. Sparks*, No. 3:24-cv-1086, 2025 WL 1655345, at *3 (N.D. Tex. June 11, 2025) (quoting *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993)).  "'Under 28 U.S.C. § 1961(a), . . . post-judgment interest is calculated at the federal rate[.]'" *Id.* (quoting *Bos. Old Colony Ins. Co.*, 288 F.3d at 234).

Here, the Court recommends Plaintiff be entitled to postjudgment interest on the total amount of its judgment from the date of the judgment until the judgment is paid in full.

## IV.    Conclusion

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Default Judgment (ECF No. 23) be **GRANTED**.  The Court **FURTHER RECOMMENDS** a Final Default Judgment be entered in Plaintiff's favor on its breach of contract claims and Plaintiff be awarded contractual damages in the amount of $230,177.04 against MYRTA, Florentino, and Brenda, jointly and severally, and $108,494.16 against Brenda (totaling $338,671.20 against Brenda), $8,856.32 in attorney's fees to be paid jointly and severally, prejudgment interest at the rate of 18.0% from November 25, 2024 to date preceding the date of entry of judgment, to be paid jointly and severally by Defendants as to Note 1, and to be paid by Brenda, as to Note 2, and postjudgment interest on the total amount of the judgment from the date of the judgment until the judgment is paid in full.  Such postjudgment interest shall be paid by Defendants, jointly and severally, as to Note 1, and paid by Brenda as to Note 2.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time

period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

     **SIGNED** in Houston, Texas on August 20, 2025.

                                                  Richard W. Bennett
                                       United States Magistrate Judge